# Exhibit A

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.   50-2021-CA-009421

ESTATE OF WALTER PARKER and
LINDA PARKER,

    Plaintiffs,

vs.

SYNGENTA CROP PROTECTION LLC,
CHEVRON U.S.A., INC.,
and UNITED STATES SUGAR CORPORATION

    Defendants.

---

### FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1. This is an action seeking damages in excess of Thirty Thousand Dollars ($30,000.00) exclusive of fees and costs.

2. Plaintiffs ESTATE OF WALTER PARKER, Deceased, and LINDA PARKER are citizens of the State of Florida and citizens of the United States of America. WALTER PARKER, Deceased, ("WALTER PARKER" or "DECEDENT") was diagnosed as having Parkinson's Disease, on or about May 2018.[1] WALTER PARKER died on October 2, 2022. Plaintiff LINDA PARKER is the personal representative of the ESTATE OF WALTER PARKER appointed by the State of Florida.[2]

3. Defendants are as follows:

---

[1] Plaintiffs had no reason to believe there was any link between paraquat exposure and Walter Parker's Parkinson's disease until no earlier than 2021.
[2] *See* Plaintiffs Motion for Substitution of Party granted by this Court.

1

**EXHIBIT A**

      a.      Defendant SYNGENTA CROP PROTECTION LLC ("Syngenta") is a Delaware company with its principal place of business in Greensboro, North Carolina. Its registered agent for service of process is CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

      b.      Defendant CHEVRON U.S.A., INC. ("Chevron U.S.A.") is a Pennsylvania corporation with its principal place of business in San Ramon in Contra Costa County, California. Its registered agent for service of process is The Prentice-Hall Corporation System, Inc., 1201 Hays Street, Tallahassee, Florida 32301.

      c.      Defendant UNITED STATES SUGAR CORPORATION ("U.S. Sugar") is a Delaware corporation with its principal place of business in Florida and may be served through its registered agent Luke Kurtz, 111 Ponce de Leon Avenue, Clewiston, Florida 33440.

4.      The Defendants are corporations who are amenable to jurisdiction in the Courts of Florida because they are either Florida corporations or foreign corporations that now conduct or have conducted business or business ventures, or have had offices or agencies within Florida, which subjects them to jurisdiction within Florida. The alleged causes of action arise out of, or are incidental, to the business or business ventures conducted within Florida by each of the Defendants or through which the Defendants purposefully directed themselves at Florida or otherwise could reasonably have foreseen that their activities would subject them to jurisdiction of the Florida courts. Defendants have through brokers, jobbers, wholesalers, or distributors sold, consigned, or leased tangible or intangible personal property to persons in this state. Defendants committed wrongful acts either outside or inside this state causing injury to DECEDENT. Defendants derive substantial revenue from interstate or international commerce and should

reasonably have expected their acts to have consequences in this state or any other state. Defendants have conducted substantial and not isolated activity within Florida. Furthermore, pursuant to Florida Statute 47.011 and 47.051, venue of this matter is proper in Palm Beach County because Defendant U.S. Sugar is a domestic corporation that resides in Palm Beach County.

5. Plaintiffs allege that the Defendants have, at all times material to these causes of action, and through and including the present, maintained sufficient contact with the State of Florida and/or transacted substantial revenue producing business in the State of Florida to subject them to the jurisdiction of this Court pursuant to Florida Statute 48.181 and/or 48.182 and/or 48.193 and/or 47.16.

**BACKGROUND**

6. WALTER PARKER was born on July 21, 1946, and died on October 2, 2022.

7. Over the course of his life, DECEDENT worked with and was exposed to products containing paraquat ("Paraquat-Containing Products") that were designed, manufactured, supplied, sold and/or distributed by Syngenta, Chevron U.S.A., and/or their predecessors (collectively, "Manufacturer Defendants").

8. DECEDENT was exposed to, breathed, ingested and/or absorbed paraquat when he worked with and around Defendants' Paraquat-Containing Products.

9. DECEDENT, and those around him, used Paraquat-Containing Products that were designed, manufactured, supplied, sold and/or distributed by the Defendants in the intended manner and without significant change in the Paraquat-Containing Products' condition. DECEDENT relied upon the Manufacturer Defendants to instruct him and those working around him regarding the proper methods for handling the products, being unaware of the dangerous properties of paraquat.

10. More specifically, DECEDENT was exposed to Paraquat-Containing Products that were designed, manufactured, supplied, sold and/or distributed by the Manufacturer Defendants in the course of his employment with Defendant U.S. Sugar from approximately 1967 to 1978 and 1980 to 2001.

11. DECEDENT would inhale, breathe, ingest and/or absorb paraquat from Paraquat-Containing Products that were designed, manufactured, supplied, sold and/or distributed by the Manufacturer Defendants, including but not limited to Gramoxone, while mixing said products and "flagging" for helicopters and other aircraft spraying sugar fields owned and/or operated by U.S. Sugar.

12. Those Paraquat-Containing Products that were designed, manufactured, supplied, sold and/or distributed by the Manufacturer Defendants to which DECEDENT was exposed during his employment with U.S. Sugar were purchased at area retailers including Chemspray in Pahokee, Florida and Helena Chemicals in Belle Glade, Florida.

13. DECEDENT would also inhale, breathe, ingest and/or absorb paraquat from Paraquat-Containing Products that were designed, manufactured, supplied, sold and/or distributed by the Manufacturer Defendants at his residence in Clewiston, Florida while he was "edging" his lawn. The Paraquat-Containing Products he used for this purpose were provided to DECEDENT by Defendant U.S. Sugar for its employees' home use.

14. DECEDENT's exposure to and inhalation of paraquat from Paraquat-Containing Products that were designed, manufactured, supplied, sold and/or distributed by the Manufacturer Defendants caused him to develop Parkinson's disease, which he was diagnosed with on or about May 2018.

## COUNT I –
## NEGLIGENCE AGAINST
## DEFENDANT SYNGENTA CROP PROTECTION LLC &
## DEFENDANT CHEVRON U.S.A., INC.

15. Plaintiffs incorporate by reference into Count I all other relevant allegations in this complaint.

16. At the time of DECEDENT's exposure to Manufacturer Defendants' Paraquat-Containing Products, Manufacturer Defendants knew, or in the exercise of ordinary care should have known, that the use of their Paraquat-Containing Products was hazardous to the health of workers, consumers, bystanders, and family members.  DECEDENT relied upon the skill and knowledge of the Manufacturer Defendants, who had a duty to advise users of their products and those who were reasonably expected to use, work with and/or work around any of their Paraquat-Containing Products of the proper methods for handling and working around paraquat containing materials.

17. At the time of DECEDENT's exposure to Manufacturer Defendants' Paraquat-Containing Products, Manufacturer Defendants knew, or in the exercise of ordinary care should have known, that the potential hazards of their Paraquat-Containing Products were not obvious or otherwise known to ordinary users such as DECEDENT, or those working with or around him. Manufacturer Defendants had a duty to warn DECEDENT and those working with and around him of any information regarding the potential dangers of paraquat and the proper methods of handling and working around paraquat and paraquat-containing material.

18. Manufacturer Defendants had a duty to exercise reasonable and ordinary care to the DECEDENT.  Manufacturer Defendants negligently breached that duty in one, some, or all of the following respects:

a. Manufacturer Defendants failed to adequately warn DECEDENT that exposure to Paraquat-Containing Products could be injurious to his health;

b. Manufacturer Defendants failed to adequately warn DECEDENT that the ordinary handling, use, and servicing of their Paraquat-Containing Products would cause fumes and droplets to become airborne and could be injurious to his health;

c. Manufacturer Defendants failed to provide with their Paraquat-Containing Products necessary information regarding how DECEDENT could and should protect himself from paraquat in connection with the use of their Paraquat-Containing Products, including safe handling and use, appropriate protective clothing and equipment, and other protective measures;

d. Manufacturer Defendants failed to take reasonable steps to provide DECEDENT with information regarding the danger of exposure to paraquat in connection with their Paraquat-Containing Products, when those products were being used or serviced by others;

e. Manufacturer Defendants failed to provide warnings to DECEDENT regarding the danger of past exposures to paraquat in connection with the use of Paraquat-Containing Products that were designed, manufactured, supplied, sold and/or distributed by the Manufacturer Defendants as additional information regarding the dangers of paraquat became available to them;

f. Manufacturer Defendants failed to exercise reasonable care to develop, publish, adopt and disseminate safe methods of spraying paraquat containing materials in connection with their Paraquat-Containing Products, having undertaken to develop,

publish, adopt and disseminate other information regarding the service, handling and installation of such materials;

g. Manufacturer Defendants failed to use reasonable care to ensure that their Paraquat-Containing Products were only distributed to, serviced and/or handled by entities and individuals who had been sufficiently trained in their safe use;

h. Manufacturer Defendants failed to provide accurate information to DECEDENT and other members of the public regarding the dangers of paraquat and their Paraquat-Containing Products by advertising, labeling and otherwise;

i. Manufacturer Defendants further negligently misrepresented affirmatively and by omission that the Paraquat-Containing Products they manufactured, sold or distributed were safe in their ordinary and foreseeable use, when such representation was untrue;

j. Manufacturer Defendants failed to provide to DECEDENT the information that they provided to their own employees regarding the hazards of paraquat and their Paraquat-Containing Products;

k. Manufacturer Defendants failed to test their Paraquat-Containing Products and/or failed to disseminate the results of tests that they did conduct;

l. Manufacturer Defendants failed to warn or advise DECEDENT and others to cease all future exposure to paraquat;

m. Manufacturer Defendants failed to develop and to place on the market non-paraquat containing materials that were reasonably available to them;

n. Paraquat-Containing Products that were designed, manufactured, supplied, sold and/or distributed by the Manufacturer Defendants were used in the manner in

7

  which they were intended to be used; however, Paraquat-Containing Products that were designed, manufactured, supplied, sold and/or distributed by the Manufacturer Defendants failed to perform their purpose safely, in that they caused DECEDENT to develop Parkinson's disease;

 o. Plaintiffs' injuries are a direct and proximate result of Manufacturer Defendants' negligence as described above and DECEDENT has suffered damages as described herein.

WHEREFORE, Plaintiffs demand compensatory damages and trial by jury on all issues so triable in this cause.

## COUNT II –
## STRICT LIABILITY AGAINST
## DEFENDANT SYNGENTA CROP PROTECTION LLC &
## DEFENDANT CHEVRON U.S.A., INC.

19. Plaintiffs incorporate by reference into Count II all other relevant allegations in this complaint.

20. Paraquat-Containing Products that were designed, manufactured, supplied, sold and/or distributed by the Manufacturer Defendants were defective in design at the time they were manufactured and at the time DECEDENT was exposed to them.

21. At the time DECEDENT used and otherwise came into contact with Manufacturer Defendants' Paraquat-Containing Products, Manufacturer Defendants' products were being used in the manner and environment intended and without substantial or unexpected change affecting their condition.

22. Paraquat-Containing Products that were designed, manufactured, supplied, sold and/or distributed by the Manufacturer Defendants contained design defects that made them

unreasonably dangerous and unfit for their intended use, in that the products were designed to contain paraquat.

23. At the time of DECEDENT's exposure to Manufacturer Defendants' Paraquat-Containing Products, Paraquat-Containing Products that were designed, manufactured, supplied, sold and/or distributed by the Manufacturer Defendants were unreasonably dangerous because of their design in that they failed to perform as safely as an ordinary consumer would expect when used in the intended manner and/or manner reasonably foreseeable to the Manufacturer Defendants.

24. At the time of DECEDENT's exposure to Manufacturer Defendants' Paraquat-Containing Products, Paraquat-Containing Products that were designed, manufactured, supplied, sold and/or distributed by the Manufacturer Defendants were unreasonably dangerous because of their design in that the risk of harm from the design of those products containing paraquat outweighed the benefits of use of the product.

25. Paraquat-Containing Products that were designed, manufactured, supplied, sold and/or distributed by the Manufacturer Defendants were also defective in that they failed to contain sufficient warnings to advise DECEDENT that the ordinary and expected uses of the products could cause grave harm.

26. The lack of sufficient warning further rendered Paraquat-Containing Products that were designed, manufactured, supplied, sold and/or distributed by the Manufacturer Defendants unreasonably dangerous and unfit for their intended and expected use.

27. Paraquat-Containing Products that were designed, manufactured, supplied, sold and/or distributed by the Manufacturer Defendants were further defective because non-paraquat-containing substitutes were reasonably available to Manufacturer Defendants.

28. Plaintiffs' injuries are a direct and proximate result of Manufacturer Defendants' conduct as described above and Plaintiffs have suffered damages as described herein.

WHEREFORE, Plaintiffs demand compensatory damages and trial by jury on all issues so triable in this cause.

### COUNT III – TORT EXCEPTION TO WORKERS' COMPENSATION IMMUNITY AGAINST EMPLOYER U.S. SUGAR

29. Plaintiffs incorporate by reference into Count III all other relevant allegations in this complaint.

30. Defendant U.S. Sugar's actions as WALTER PARKER's employer fall within the intentional tort exception to workers' compensation immunity.

31. More specifically, Defendant U.S. Sugar engaged in conduct which was substantially certain to result in injury or death to WALTER PARKER, *inter alia*:

   a. Sending employees into sugar fields without protective equipment while they were being sprayed with paraquat;

   b. Requiring employees to mix paraquat without adequate protection; and

   c. Making paraquat available to employees for home use.

32. Plaintiffs' injuries are a direct and proximate result of the defects in Manufacturer Defendants Paraquat-Containing Products that WALTER PARKER received from Defendant U.S. Sugar during the course of WALTER PARKER's employment with Defendant U.S. Sugar. As a result, Plaintiffs suffered damages as described herein.

WHEREFORE, Plaintiffs demand compensatory damages and trial by jury on all issues so triable in this cause.

### COUNT IV – LOSS OF CONSORTIUM AGAINST ALL DEFENDANTS

10

33. Plaintiffs incorporate by reference into Count IV all other relevant allegations in this complaint.

34. Plaintiff LINDA PARKER is, and at all times since December 26, 1966 has been, the lawful spouse of WALTER PARKER. At the time that WALTER PARKER was diagnosed with Parkinson's disease, LINDA PARKER was cohabitating with WALTER PARKER and enjoying his companionship and care. This companionship and care continued until his unfortunate death on October 2, 2022.

35. As a direct and proximate result of the conduct described in the allegations contained in all Counts of this Complaint, and DECEDENT's resulting disease and death, Plaintiff LINDA PARKER has suffered the loss of consortium and damage to the marital and social relationship, including but not limited to (1) the loss of WALTER PARKER's services, comfort, affection and life, and (2) the effects of WALTER PARKER's disease upon their relationship and daily activities. They have further incurred expenses for medical attention rendered to WALTER PARKER and funeral and burial expenses as a result of his death.

WHEREFORE, Plaintiffs demand compensatory damages and trial by jury on all issues so triable in this case.

### COUNT V – WRONGFUL DEATH
### AGAINST ALL DEFENDANTS

36. Plaintiffs incorporate by reference into Count IV all other relevant allegations in this complaint.

37. Plaintiff LINDA PARKER is the personal representative of the ESTATE OF WALTER PARKER and the DECEDENT's surviving spouse.

38. As a direct and proximate result of the conduct described in the allegations contained in all Counts of this Complaint, DECEDENT suffered from a resulting disease, physical and emotional harm, and ultimately, death.

39. As a direct and proximate result of the conduct described in the allegations contained in all Counts of this Complaint the Plaintiff LINDA PARKER and DECEDENT's heirs have suffered the loss of consortium and damage to the familial and social relationship, including but not limited to: (1) the loss of WALTER PARKER's services, comfort, affection and life, and (2) the effects of WALTER PARKER's disease and death upon their relationship and daily activities.  They have further incurred expenses for medical attention rendered to WALTER PARKER and funeral and burial expenses as a result of his death.

## **DAMAGES**

40. As a direct and proximate result of the negligence, carelessness, gross negligence, willful misconduct, strict liability, misrepresentation and willful omissions of the Defendants as described, DECEDENT contracted diseases and injuries causing the DECEDENT to suffer physical pain, and mental anguish and, ultimately, the loss of his life.

41. Each exposure to the paraquat-containing products of Manufacturer Defendants was harmful and caused or contributed to Plaintiffs' injuries.  Plaintiffs' injuries arose out of or were connected to, and were incidental to, the manufacture, sale and distribution by Manufacturer Defendants of their paraquat-containing products.

42. As a direct and proximate result of the conduct described, Plaintiffs were obliged to spend various sums of money to treat WALTER PARKER's disease and injuries, and Plaintiffs continue to be obliged for the expenses of same.  As a direct and proximate result of Defendants'

conduct, DECEDENT's enjoyment of life and earning capacity has been impaired and his life expectancy shortened.

43. From the time WALTER PARKER first learned of his disease, he suffered mental and physical pain and anguish as a result of his disease. Additionally, DECEDENT was at an increased risk of death and incurred expenses to monitor his condition and to provide the necessary care to deal with his disease. Additionally, Plaintiffs have suffered, and will continue to suffer, mental anguish.

44. As a direct and proximate result of the aforesaid, and since DECEDENT first learned of his aforementioned injuries, he developed severe anxiety, hysteria or phobias, any or all of which developed into a reasonable and traumatic fear of the progression of his Parkinson's disease, including, but not limited to, death resulting from exposure, directly and indirectly, to the Paraquat-Containing Products of the Manufacturer Defendants.

45. As a direct and proximate result of the aforesaid, DECEDENT suffered, psychological damage.

46. As a direct and proximate result of the Defendants' conduct, DECEDENT and his wife LINDA PARKER have suffered a disintegration and deterioration of their family unit and familial relationships, resulting in enhanced anguish, depression, and other symptoms of psychological stress and disorder.

47. For the reckless, willful, intentional, gross negligent, and wanton acts and omission of said Defendants previously alleged, the ESTATE OF WALTER PARKER is entitled to recover damages from said Defendants.

48. As a direct and proximate result of the conduct described in the allegations contained in all Counts of this Complaint, and Plaintiff's resulting disease, Plaintiff LINDA

PARKER has suffered the loss of consortium and damage to the marital and social relationship, including but not limited to (1) the loss of WALTER PARKER's services, comfort, affection and (2) the effects of WALTER PARKER's disease upon their relationship and daily activities. Plaintiffs have further incurred expenses for medical attention rendered to WALTER PARKER and will continue to incur such expenses.

WHEREFORE, Plaintiffs request judgment against the Defendants for compensatory damages as set forth above and Plaintiffs further seek interest, including prejudgment interest.

## DEMAND FOR JURY

Plaintiffs demand trial by jury on all issues.

Dated: July 3, 2023

Respectfully submitted,

**SEARCY DENNEY SCAROLA BARNHART & SHIPLEY**

By: /s/ C. Calvin Warriner, III
C. Calvin Warriner, III
Florida Bar No.: 374131
Searcy Denney Scarola Barnhart & Shipley, P.A. 2139 Palm Beach Lakes Blvd.
West Palm Beach, Florida 33409
Phone: (561) 686-6300
Fax: (561) 383-9442
E-Mail: ccw@searcylaw.com
E-Mail: clb@searcylaw.com

Gibbs C. Henderson
Illinois Bar No.: 6314687
Texas Bar No.: 24041084
*Pro Hac Vice*
**NACHAWATI LAW GROUP**
5489 Blair Rd.
Dallas, TX 75231
Telephone: (214) 890-0711
Facsimile: (214) 890-0712
ghenderson@ntrial.com

14

mlatin@ntrial.com

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of July, 2023, a true and correct copy of the foregoing instrument was filed and served on all counsel of record using the Court's CM/ECF system.

*/s/ C. Calvin Warriner, III*
C. Calvin Warriner, III